IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Samer D. Kahook, ) | C/A No.: 1:11-2393-JMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| Savannah River Nuclear Solutions LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

In this employment discrimination case, Samer D. Kahook ("Plaintiff") is suing his former employer Savannah River Nuclear Solutions LLC ("Defendant"). Plaintiff alleges claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* ("Title VII"). Specifically, he alleges Defendant discriminated against him on the basis of national origin (Arab/Middle Eastern), religion (Muslim), and color (brown). [Entry #1-2 at 6–7; Entry #34 at 1–2].

This matter comes before the court on Defendant's motion for summary judgment filed on August 17, 2012. [Entry #24]. Plaintiff filed a response on October 2, 2012 [Entry #34], and Defendant filed a reply on October 12, 2012 [Entry #35]. The motion for summary judgment having been fully briefed, it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant the motion.

I.      Factual and Procedural Background

The Savannah River Site ("SRS") is owned and operated by the Department of Energy ("DOE").  [Entry #24-3 at 20].  Defendant operates SRS pursuant to a Management and Operations ("M&O") Contract.  *Id.*  Defendant assumed responsibility for the M&O Contract for SRS in August 2008 from its predecessor, Washington Savannah River Company ("WSRC").  [Entry #24-2 at 3, 8].

Plaintiff began his employment at SRS with WSRC in August 1991 as a senior engineer in the Reactor Restart Section.  [Entry #24-2 at 3].  Later that year, Plaintiff sought and received a higher security clearance—a Q clearance—from the DOE.[1]  *Id.* at 3–4.  The Q clearance permitted him to access certain classified information.  *Id.* at 4.  After working in several different positions, Plaintiff obtained a position in the Nuclear Criticality Safety Engineering Department ("NCSED") in or around March 2009.  *Id.* at 4–7, 10.  As a nuclear criticality engineer, Plaintiff was responsible for creating safety policies to ensure the safe operation of nuclear equipment at SRS.  [Entry #24-5 at 6].  Plaintiff performed these tasks by creating computer models of scenarios or accidents to help SRNS develop controls and limits under which employees would work to remain safe.  [*Id.*; Entry #24-3 at 8].  To perform this task, Defendant expected Plaintiff to perform a monthly walk-through of the facilities to better understand the work being done and to use that information in creating computer models and writing policies.  [Entry #24-5 at 4; Entry #24-3 at 8].

---

[1] DOE makes all decisions related to the granting or suspension of security access at SRS.  [Entry #24-2 at 15].

In January 2010, Defendant submitted a request for the renewal of Plaintiff's Q clearance. [Entry #24-2 at 45]. By letter dated August 24, 2010, the DOE informed SRNS that it was suspending Plaintiff's Q access authorization.[2] [Entry #24-4 at 29]. In the letter to SRNS, Jack Craig, acting manager for the DOE's Savannah River Operations Office, stated that he had suspended Plaintiff's authorization pending final resolution of his continuing eligibility for a DOE access authorization. *Id.* The letter further stated the following: "Mr. Kahook should be reassigned to activities not requiring access to classified information, special nuclear materials, and/or secured areas. If this is not feasible, and he is placed in a non-work status, you are authorized to continue his salary until you are notified of the Hearing Officer's recommendation in this case." *Id.*

DOE also sent Plaintiff a letter dated August 24, 2010, regarding his suspension. [Entry #24-2 at 46]. The letter indicated that the suspension was based on Plaintiff's recent contacts with officials representing the government of Jordan, but noted that this information would not be included in the letter to Defendant. *Id.*

At the time of Plaintiff's suspension, the following policy was in effect at SRS:

Security Clearance
Employment offers are contingent upon the ability to obtain necessary security clearances. If an employee cannot obtain a security clearance, every effort is made to locate a position that does not require a clearance. Employees are subject to termination if denied site access by DOE or the Company when their management is unable to find an assignment for them not requiring access to classified information or security areas.

[Entry #24-3 at 26].

---

[2] The parties use the terms "access authorization," "security clearance," and "clearance" interchangeably in their briefs.

Notes from a meeting on September 1, 2010, reflect that upper management met to discuss Defendant's policy on security clearances. [Entry #24-4 at 30; Entry #25-1 at 7]. Under the heading "Path Forward," the notes include the following list: (1) "Mtg Fred, Jim + Me on sec. clearance"; (2) "no placement for Salaymeh + Kahook"; (3) "no placements whatsoever." [Entry #24-4 at 30]. Lorrie Lott, manager of Defendant's HR Policy and Human Resources department, testified that the group decided to change the policy on security clearances, but she could not recall whose idea it was. [Entry #25-1 at 8]. In describing the policy change, she stated that if an employee no longer had the security clearance needed to do his job, Defendant would not try to provide the employee with another position within the company. *Id.* She testified that Plaintiff and Mr. Salaymeh were discussed at the meeting because "that was the time period that those two came up." *Id.* at 10. Defendant's stated reason for revising its policy was that the company was already facing a significant reduction in force and concluded that continuing to employ individuals who had lost their security clearance would result in extra costs to the company, as well as less flexibility in getting work done. [Entry #27-2 at 3].

Defendant subsequently revised its policy manual to include the following policy:

Security Clearance
Employment offers are contingent upon the ability to obtain necessary security clearances. Employees are subject to termination if denied site access by the Department of Energy (DOE) or the M&O Contractor when the employee is unable to obtain or maintain a security clearance.

4

[Entry #24-3 at 31]. The effective date of the policy listed in the revised manual is October 12, 2010 [Entry #24-3 at 29]; however, Ms. Lott testified the policy was made effective on September 1, 2010. [Entry #25-2 at 1].

Plaintiff continued to work until approximately September 2, 2010, when Terry Ortner, the deputy director of the NCSED, informed him that he had to turn in his badge until the suspension issue was resolved. [Entry #24-2 at 17].

On September 3, 2010, Defendant terminated Marvin O. Johnson, a production operator at Defendant's tritium facility, for his inability to maintain a security clearance. [Entry #25-1 at 9–10; Entry #27-3 at 14]. Plaintiff concedes Mr. Johnson was not Middle Eastern and indicates that he presumably was not Muslim. [Entry #34 at 11].

Plaintiff subsequently received a call from Larry Johnson, director of the NCSED, asking him to attend a meeting on September 8, 2010. [Entry #24-2 at 18]. At the meeting, Robert Moody, a human resources representative, told Plaintiff his employment was being "discontinued." *Id.*

Since Plaintiff's termination, Defendant has terminated the following eight employees whose security clearances had been suspended by the DOE: Saleem Salaymeh, Murray Baxter, Willie Moore, Carl Storey, Charles Sganga, John Pinkston, Randall Sprague, and Johnnie Baxter. [Entry #27-3 at 4, 6–27].

Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission ("SCHAC") on January 3, 2011, alleging discrimination based on color, religion, and national origin. [Entry #24-2 at 50]. He asserted that he was aware of similarly-situated employees who were not Muslim, were not of Arab/Middle East origin,

5

and who were not dark in color that lost their security clearance and were not suspended or terminated. *Id.* SCHAC issued a dismissal and right to sue notice on May 18, 2011. *Id.* at 51. On July 29, 2011, Plaintiff filed the present lawsuit in state court alleging discrimination under Title VII on the basis of national origin (Arab/Middle Eastern), religion (Muslim), and color (dark). [Entry #1-2 at 6–7]. Defendant removed the case on September 7, 2011. [Entry #1].

II.     Discussion

    A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-

6

moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

B.   Analysis

1.   Viability of Plaintiff's Title VII Claims

Defendant argues Plaintiff has failed to establish a prima facie case of discrimination under Title VII because he cannot demonstrate that he was qualified for the job at the time of his termination and cannot establish that other employees who were not members of the protected group were treated more favorably. [Entry #24-1 at 16–19]. Defendant alternatively argues that even if Plaintiff has established a prima facie case, he is unable to rebut the legitimate grounds offered for his termination. *Id.* at 19–25. Plaintiff disputes both assertions. [Entry #34 at 16–23].

Title VII makes it unlawful for an employer to discriminate against an employee with respect to compensation, terms, conditions or privileges of employment on the basis of race. 42 U.S.C. § 2000e–2(a). In the absence of direct evidence of discrimination, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] Under the *McDonnell Douglas* framework, Plaintiff has the initial burden of establishing a prima facie case of discrimination. To establish a prima facie case, Plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) that similarly-situated

---

[3] Plaintiff does not assert that there is any direct evidence of discrimination in this case.

7

employees outside the protected class received more favorable treatment. *White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the disparate treatment. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing a legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination *vel non*." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reason, but was pretext for discrimination. *Reeves*, 530 U.S. at 143. Throughout the burden-shifting scheme set forth in *McDonnell Douglas*, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude Defendant intentionally discriminated against him.

      a.    Plaintiff has failed to establish a prima facie case.

Defendant does not dispute that Plaintiff is a member of a protected class or that he was terminated. [Entry #24-1 at 16]. Defendant argues that Plaintiff cannot establish a prima facie case of discrimination because, by having his security clearance suspended,

8

he was not qualified for his position and all other employees who had their security clearances suspended were terminated as well.

It is undisputed that Plaintiff's security clearance was suspended. However, Plaintiff disputes Defendant's assertion that he was not qualified to perform the full scope of his duties. In determining satisfactory job performance, it is the perception of the decisionmaker that is relevant, not the self-assessment of the plaintiff. *King v. Rumsfeld,* 328 F.3d 145, 149 (4th Cir. 2003) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996)). An employer's expectations of its employees are "legitimate" when they are honestly held; whether the employee agrees with those expectations is not the test. *Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 30 (2d Cir.1997) (stating that "a plaintiff must satisfy the employer's honestly-held expectations"). In this context, the term "legitimate" means that expectations cannot be a "sham designed to hide the employer's discriminatory purpose." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 518 (4th Cir. 2006).

Plaintiff contends he was meeting Defendant's reasonable expectations because his work did not require a Q security clearance. [Entry #34 at 17]. He also argues that his supervisor testified there was sufficient work that did not require a security clearance to keep him busy for six months and that there were other engineers in his department who could cover any of his duties that required a Q clearance. *Id.* These arguments undercut Plaintiff's contention that he did not require a Q security clearance.

9

Furthermore, Plaintiff admitted that, in light of the suspension, Defendant would not have been able to assign him any additional work requiring a security clearance. [Entry #24-2 at 16]. Finally, Ms. Huffines, his direct supervisor, and Larry Johnson, the director of the NCSED, both testified that Plaintiff required a Q security clearance to perform his job. [Entry #24-5 at 4; Entry #24-3 at 7]. Other than his own testimony, Plaintiff has failed to produce any evidence demonstrating that he did not require a security clearance to perform his job. The undersigned concludes that Plaintiff has presented no evidence from which a reasonable jury could find that Defendant's requirement that Plaintiff possess a Q security clearance was a sham. For these reasons, the undersigned recommends a finding that Plaintiff has failed to establish the second element of the prima facie case.

Defendant also argues that Plaintiff fails to meet the fourth element of the prima facie case, requiring him to show that similarly-situated employees outside the protected class received more favorable treatment. [Entry #24-1 at 18–19]. Defendant identifies nine employees, in addition to Plaintiff, who have been terminated for loss of security clearance since Defendant changed its security clearance policy. *Id.* In response, Plaintiff appears to abandon the allegation in his complaint that other similarly-situated employees outside of the protected classes were not terminated when their clearances were suspended or terminated. [Entry #1-2 at 6]. He has not identified any comparators who were treated more favorably or provided any evidence that such comparators exist. Instead, Plaintiff argues that the fourth element of a prima facie case does not apply because, by enforcing the revised policy against employees outside the protected classes,

Defendant intended to disguise its act of discrimination against Plaintiff. [Entry #34 at 17]. Relying on *Brown v. Mclean*, 159 F.3d 898 (4th Cir. 1998), Plaintiff contends he can eliminate the requirement of establishing the fourth element by eliminating Defendant's enforcement of the policy as an "inference of non-discrimination." [Entry #34 at 17].

*Brown* is inapplicable here. In that wrongful termination case, the court noted there may limited exceptions to the requirement that a plaintiff show that the defendant filled his former position with someone outside the protected class. 159 F.3d at 905. Those exceptions include instances in which "the employer's hiring of another person within a protected class is calculated to disguise its act of discrimination toward the plaintiff." *Id.* (citing *Jones v. Western Geophysical Co.*, 669 F.2d 280, 284–85 (5th Cir. 1982). In the present case, Plaintiff's replacement is not at issue. Rather, the issue is whether Defendant applied the revised security clearance policy consistently, regardless of its employees' membership in protected classes. Thus, the exception noted in *Brown* does not apply and Plaintiff has cited no authority for the proposition that he need not satisfy the fourth element of a prima facie case. Because Plaintiff has failed to show that similarly-situated employees outside the protected class received more favorable treatment, the undersigned recommends the district court grant Defendant's motion.

b.     Plaintiff has failed to establish discrimination *vel non.*

Even assuming Plaintiff had established a prima facie case of discrimination, summary judgment is still appropriate because Defendant has proffered a legitimate, nondiscriminatory reason for his dismissal, and Plaintiff has failed to submit evidence

that the reason is merely pretext for discrimination. Defendant asserts that it terminated Plaintiff because his security clearance was suspended and he required the security clearance to perform the full scope of his duties. [Entry #24-1 at 20]. The burden, therefore, shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reason, but was pretext for discrimination. *Reeves*, 530 U.S. at 143. "At this point, the burden to demonstrate pretext merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (internal citations omitted). In order to satisfy this burden, it is not sufficient for Plaintiff to show merely that Defendant's asserted reason is false; rather, Plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center*, 509 U.S. at 515–16. Here, the undersigned finds that Plaintiff has failed to identify a genuine dispute of material fact as to whether his termination was the result of intentional discrimination.

Plaintiff bases his pretext argument on evidence that he claims raises an inference of discrimination. Central to Plaintiff's pretext argument is Defendant's decision to change its security clearance policy. Under the prior policy, employees were subject to termination following the suspension of their security clearance when management was unable to find an assignment for them not requiring access to classified information or secured areas. [Entry #24-3 at 26]. The revised policy does not require management to find alternative work for employees whose clearance has been suspended. [Entry #24-3 at 31]. Defendant contends it revised its policy because it was already facing a

12

significant reduction in force and concluded that continuing to employ individuals who had lost their security clearance would result in extra costs to the company as well as less flexibility in getting work done. [Entry #27-2 at 3].

Plaintiff disputes Defendant's stated reason for the policy change and argues Defendant changed the policy specifically to deny employment to him and Saleem Salaymeh, also a Muslim from the Middle East. [Entry #34 at 20]. In support, he cites the handwritten notes from the September 1, 2010, meeting, which indicate there will be "no placement for Salaymeh & Kahook . . . no placements whatsoever." *Id.* While Plaintiff and Salaymeh are specifically referenced in the notes, Plaintiff's selective quotation is misleading. The notes contain three numbered points related to the policy change. [Entry #24-4 at 30]. The second point indicates there will be no placements for Plaintiff and Salaymeh. *Id.* The third point indicates there will be no placements whatsoever. *Id.* A plain reading of the notes suggests that Defendant intended to implement a company-wide policy wherein there would be no placements whatsoever for any employee whose clearance was suspended. Consequently, the undersigned does not find the meeting notes sufficient to establish pretext.

Plaintiff also contends the effective date of the policy is evidence of pretext. The parties dispute when the decision to change the policy occurred and whether the decision-makers knew that Plaintiff was one of the employees whose security clearance had been suspended when the decision was made. [Entry #24-1 at 8–9; Entry #34 at 5–8]. Although Plaintiff argues the policy did not go into effect until October 12, 2010, the record demonstrates that the decision to change the policy occurred, at latest, on

13

September 1, 2010, and that the policy went into effect on that date. [Entry #25-2 at 1]. Plaintiff points to no evidence other than the publication date on the revised policy manual to support his contention that the policy went into effect after his termination. Because the testimonial evidence shows the policy was in effect prior to Plaintiff's termination, the effective date of the policy does not establish pretext or Defendant's allegedly discriminatory motives.

Assuming, *arguendo*, that Defendant's decision to change the policy was discriminatory, Plaintiff has not shown that Defendant discriminatorily applied the policy. The evidence shows that following the effective date of the policy, Defendant has terminated every employee whose clearance has been suspended or revoked. [Entry #27-3 at 4]. Plaintiff's attempts to distinguish himself from comparators Marvin Johnson and Murray Baxter are unavailing. [Entry #34 at 11–12]. Consistent with the revised security clearance policy, the termination papers for both men document that they were terminated after September 1, 2010, because their clearances were suspended. [Entry #27-3 at 13–14]. Furthermore, for the reasons set forth in Section II.B.1.a., *supra*, the undersigned is not persuaded by Plaintiff's claims that his work did not require a security clearance. Thus, Plaintiff was treated no differently than similarly-situated employees outside of his protected classes and has not shown that Defendant's decision to terminate him—a decision distinct from the decision to change the policy—was discriminatory.

The court is mindful of the fact that Plaintiff's termination resulted in an inability to appeal his security clearance suspension. [Entry #34 at 13]. Further, the court understands Plaintiff's frustration with Defendant's decision to revise the security

14

clearance policy and his resulting termination. However, where Defendant has given a legitimate, non-discriminatory reason for discharging Plaintiff, it is not the court's "province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."[4] *Hawkins v. Pepsico*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting and citing *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)); *DeJarnette,* 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination . . . ." (internal quotation marks omitted)); *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir. 1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer").

Plaintiff has not proven that Defendant's actions, however unfair, were discriminatory in nature. Plaintiff contends that his name alone put Defendant on notice of his Middle Eastern background and of his probable Muslim faith. [Entry #34 at 12]. Other than his own speculation, however, he has failed to produce any evidence demonstrating Defendant knew of Plaintiff's protected-class status during the relevant time period. Furthermore, Plaintiff has failed to produce any evidence showing that Defendant considered his race, national origin, or religion when it revised its security

---

[4] "Proof that the employer's proffered reasons in unpersuasive, or even obviously contrived, . . . does not necessarily establish that [plaintiff's] proffered reason (race, color, and religious discrimination) . . . is correct." *Reeves*, 530 U.S. at 146–47. "It is not enough to disbelieve the [employer]." *Love–Lane v. Martin*, 355 F.3d 766, 788 (4th Cir. 2004). Plaintiff must show a reasonable jury could "believe [her] explanation of intentional race discrimination." *Id.*

clearance policy and terminated him. Consequently, the undersigned recommends the district court grant Defendant's motion for summary judgment.

### 2. Preclusion Under Title VII

Defendant also argues Plaintiff's claims are precluded by Title VII's national security exception, 42 U.S.C. § 2000e–2(g). [Entry #24-1 at 13]. The statute provides in pertinent part:

> [I]t shall not be an unlawful employment practice for an employer to fail or refuse to hire and employ any individual for any position . . . if
>
> (1) the occupancy of such position . . . is subject to any requirement imposed in the interest of the national security of the United States under any security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President; and
>
> (2) such individual has not fulfilled or has ceased to fulfill that requirement.

42 U.S.C. § 2000e–2(g).

In applying this section, "[c]ourts have found jurisdiction lacking in cases implicating security clearance determinations." *Cruz-Packer v. Chertoff*, 612 F. Supp. 2d 67, 70 (D.D.C. 2009). Specifically, courts have applied the Title VII exception where the Plaintiff's theory of the case required the court to evaluate the propriety of the security clearance determination. *See, e.g., Bennett v. Chertoff*, 425 F3d 999 (D.C. Cir. 2005); *Ryan v. Reno*, 168 F.3d 520, 524–25 (D.C. Cir. 1999). Here, Plaintiff does not challenge the suspension of his clearance. Rather, he challenges his termination and Defendant's decision to change its policy on how to treat employees whose clearance had been suspended or terminated. Defendant has cited no cases in which courts have applied Title VII's national security exception where the propriety of the security clearance

16

determination was not at issue. For the foregoing reasons, the undersigned does not rely on this exception in recommending that Defendant's motion for summary judgment be granted.

III.   Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendant's motion for summary judgment [Entry #24] be granted.

IT IS SO RECOMMENDED.

January 25, 2013  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).